UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| CRANE, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SUSSEX COUNTY PROSECUTOR'S OFFICE, ET AL., <br><br> Defendants | Civil Action No. 08-1641 (SDW) (ES) <br><br><br> **OPINION** <br><br> **January 26, 2009** |

**WIGENTON, U.S. DISTRICT JUDGE:**

## INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiffs Frankie Crane, Dolores A. Ambrosio (as administrator of the estate of Andrew Darezzi), Sandra Grimm, Rae Ann Royce, Minnie Smith, and Frank Vandermark (collectively "Plaintiffs") allege they were the victims of a scheme in which they were accused and eventually exonerated of selling drugs. Plaintiffs aver that this scheme, allegedly cooked up by a police informant with a checkered past, was aided in unconstitutional fashion by the police officer and prosecutor Defendants. Defendants Thomas J. Reed, Jason Lyons, and John Frekyar filed motions to dismiss the action under Fed. R. Civ. P. 12(b)(6) asserting that Plaintiffs have made bald and conclusory allegations and that they are protected by the doctrine of qualified immunity.

For the reasons set forth below, the Court holds that the federal claims can go forward against all of these individual Defendants, but some of the state claims cannot survive.

Accordingly, the motions will be granted in part, and denied in part. Also before the Court is a motion to amend the Complaint under Fed. R. Civ. P. 15 to add Sergeant Timothy Cooney as a defendant. That motion will be granted.

## BACKGROUND[1]

On March 20, 2007, the Sussex County Prosecutor's Office entered into an agreement with Gregory Babcock to participate in drug stings. Babcock was to provide the names of drug dealers he knew in Sussex County. To that end, on March 30, 2007, Detective Lyons gave Babcock $100 in cash and wired him up for the purpose of purchasing drugs from Plaintiff Sandra Grimm. Detective Frekyar positioned himself near where the transaction would take place to monitor and listen to the conversation. After the transaction with Grimm, Babcock handed Detective Lyons two pieces of aluminum foil containing white rocks.

This exact scenario unfolded with the remainder of the Plaintiffs: on April 10, 2007, with Plaintiff Royce; on April 19, 2007 with Darezzi (now diseased; his mother now brings suit on his behalf); on April 20, 2007, with Plaintiff Vandermark; on April 25, 2007, with Plaintiff Smith; and finally, on April 26, 2007, with Plaintiff Crane.

Plaintiffs say that after each transaction, Detective Lyons "allegedly" field tested the contents of the white rocks. He reported that after each field test, the substance tested positive for cocaine. Thereafter, on May 15, 2007, Detective Lyons swore out probable cause warrants for the purpose of arresting all six Plaintiffs. The warrants issued the same day. The next day, all six Plaintiffs were arrested. After entering Plaintiffs' homes, the arresting agents conducted searches. No illegal drugs were found.

---

[1] Plaintiffs' allegations must be accepted as true at this stage, so the facts will be recited in that vein. *See Brown v. Phillip Morris, Inc.*, 250 F.3d 789 (3d Cir. 2001).

-2-

Sometime following their arrests, each of the samples obtained by the police via Babcock were tested at the state police laboratory and all samples tested negative. In other words, none was a controlled substance. Plaintiffs allege that Lyons never tested any of the rocks given to him by Babcock, or that he flat out misrepresented the results. Additionally, none of the audio recordings of the transactions revealed anything incriminating.

In sum, Plaintiffs allege that Babcock pocketed the $100 he was given each time and then brought back to the police nothing more than crushed drywall.

Five of the six plaintiffs spent some time in jail after their arrests. Plaintiff Crane spent 3 days; Darezzi, 33; Grimm, 5; Royce 8; and Vandermark, 100. Each posted bail after these stints. The Sussex County Prosecutor's Office administratively dismissed all charges against the Plaintiffs on December 18, 2007.

On April 4, 2008, Plaintiffs filed a three count Complaint in this Court, the first of which asserts violations of 42 U.S.C. § 1983 (via the Fourth Amendment for false arrests, illegal searches, false imprisonment, and malicious prosecution). The second and third counts of the Complaint assert a litany of state common law and constitutional violations against each defendant: malicious prosecution, false arrest, due process, equal protection, "denial of rights," and illegal searches.

Defendants filed the instant motion to dismiss for failure to state a claim. The gravamen of Defendant Reed's argument is that he is absolutely immunized for actions taken by him because he is a prosecutor. Defendants Lyons and Frekyar argue that they are qualifiedly immune from their actions.

-3-

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in a light most favorable to the non-moving party. *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed.2d 59 (1984). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S. Ct. 2490, 53 L.Ed.2d 557 (1977).

When Plaintiffs asserts claims, they must provide sufficient notice to defendants of the factual allegations that entitle them to relief as articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*. To wit

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement' to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

127 S. Ct. 1955, 1964-65 (2007) (citations omitted). The Third Circuit has emphasized that the Court reaffirmed that Rule 8 still only requires a short and plain statement of claims and their factual underpinnings. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). However, there is now a "plausibility paradigm" for evaluating the sufficiency of complaints. *Id.* at 230. "[F]actual allegations in the complaint must not be "so undeveloped that it does not

provide a defendant the type of notice of claim which is contemplated by Rule 8." *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Phillips*, 515 F.3d at 233). Still, left in tact and harmony with *Twombly* is the notion that courts will read complaints to determine if "under any reasonable reading. . . the Plaintiff may be entitled to relief." *Pinker v. Roche Holdings, Ltd.* 292 F.3d. 361, 374 n. 7 (3d Cir. 2002).

A motion for leave to amend a complaint shall be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15. Although leave to amend the pleadings under Fed. R. Civ. P. 15 is granted liberally, the court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* Finally, the decision whether to grant or deny a motion for leave to amend rests "within the discretion of the District Court." *Id.*

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.' " *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). To determine whether a proposed amendment is futile the Court applies the same standard as a motion to dismiss under Rule 12(b)(6). *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.*, 380 F. Supp. 2d 457, 462 (D.N.J. 2005). The Court therefore must accept all factual allegations as true "as well as the reasonable inferences that can be drawn from them." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

## ANALYSIS

### A. The Federal Claims

#### 1. Lyons, Frekyar, and Cooney

"To recover under 42 U.S.C. § 1983, [Plaintiffs] must establish that a state actor engaged in conduct that deprived him of rights, privileges, or immunities secured by the constitution or laws of the United States." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Because defendants have raised a qualified immunity defense, Plaintiffs shoulder an additional burden. *Id.* "[T]he qualified immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Independence Tp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). Questions of immunity should be resolved at the earliest possible stage of a litigation for the very reason that if a party is legally immune from suit, she should not have to engage in what could be burdensome discovery. *See Thomas*, 463 F.3d at 291.

The qualified immunity analysis unfolds in two steps. The first question is whether or not "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] If not, the analysis ends, the claim disposed of. If such a violation is established,

---

[2] The Supreme Court's recent opinion in *Pearson v. Callahan*, 555 U.S. __ (Jan. 21, 2009), does not change this Court's analysis. In *Pearson*, the Court held that the *Saucier* approach was not an "inflexible requirement." Slip op. at 1. The Court stated that the *Saucier* "two-step" should no longer be regarded as mandatory. Slip op. at 10. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs on the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Slip op. at 10. Highlighting the Court's modification of the *Saucier* analysis was that in some cases, "a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all," slip op. at 11, and that occasionally at the pleading stage the exact contours of the constitutional right alleged to have been violated "may be hard to identify." Slip op. at 13. As is made evident below, the Court has no trouble identifying the nature

however, the second inquiry is whether the "right is clearly established [such that] it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id.* at 202. If the right is not so established, immunity obtains.

This Court now holds that Plaintiffs have stated a valid constitutional claim against Detectives Lyons and Frekyar, and Sergeant Cooney, and that they are not entitled to immunity at this time.

*Plaintiffs have stated a constitutional claim.* The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. U.S. Const. amend. IV. Plaintiffs' complaint adequately states claims for false arrest, malicious prosecution, and illegal search. Notwithstanding their other elements, each of these claims stands or falls based on the existence of probable cause or not. That is to say, if the police here had probable cause (with a qualification in the false arrest context) to effectuate the arrest of the Plaintiffs, their § 1983 claims would all fail. *See Groman v. Tp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (false imprisonment claim would fail if arrest is based on probable cause); *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (malicious prosecution claim would fail if proceedings were brought without probable cause); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (even if a warrant issued based on probable cause that purportedly existed at the time of its issuance, officers not automatically shielded from liability for false arrest).

The gravamen of Plaintiffs' complaint is that Detective Lyons either "never tested any of the samples allegedly purchased by [Babcock] from Plaintiffs and swore that he did, or he misrepresented the results." Compl. ¶ 58. This allegation is the harm from which all Plaintiffs'

---

of the constitutional issue at stake because the alleged constitutional violation has been laid out in clear and stark terms by the Plaintiffs. This Court has no difficulty disposing of both *Saucier* inquiries at this stage of the case.

1983 claims flow. While a judge found probable cause to issue the warrants here based on Detective Lyons's affidavit, Plaintiffs allege in stark terms that at worst, Lyons misrepresented the results to obtain a probable cause warrant. Such an allegation is sufficient to state a claim based on *Wilson, supra*, 212 F.3d 781.

In *Wilson*, the Third Circuit squarely addressed the situation where a Plaintiff alleges that a probable cause warrant issued based on misrepresentations to a judge. "[A]n arrest warrant issued by a magistrate or judge does not, in itself shelter an officer from liability for false arrest." *Id.* at 786. Plaintiffs will succeed under 1983 on a false arrest claim when they can show, by a preponderance, "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* at 786-87.

This is not an omission case; rather, Plaintiffs assert that Detective Lyons affirmatively misrepresented the results of the field test (by either lying about their result, or lying that he had actually conducted one). "[A]ssertions can be made with reckless disregard for the truth even if they involve minor details – recklessness is not measured by the relevance of the information, but the demonstration of willingness to affirmatively distort the truth." *Id.* at 788.

Here, we are concerned with not a minor detail or irrelevant information; instead, we confront a situation where warrants may not have issued had the results of the field tests not been sworn to by Detective Lyons, as the police were dealing with a questionable informant. The fact of whether or not Babcock was actually providing the police officers actual drugs is the *sine qua non* of the issuance of the warrant on this limited factual record and thus, there can be no doubt that the results of the field test were material to the issuance of the warrant. This Court's task is

to disregard the offending statement in the warrant application and then determine whether or not the corrected warrant application would suffice to establish probable cause. *Id.* at 789. Accepting Plaintiffs' allegations as true and viewing the facts in the light most favorable to them, as the Court must, the Court concludes that the warrant would not have issued without the conclusion that the field test indicated that the rocks, never found in the Plaintiffs' possession and only brought back by Babcock without any other verification, were cocaine.

The Court is very mindful of the counterargument: that when police obtain white powder, or rock-like substances in a sting-like situation, there will *always* be probable cause to arrest. *See, e.g., Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) ("Garcia concedes that finding a white powder in a person's possession provides probable cause to arrest that person for possession of cocaine"). In this instance, however, it is important to note that none of the Plaintiffs here were ever found with a controlled substance in their *possession*. Rather, the Court is mindful of law enforcement's constitutional leeway to effect lawful and important sting operations in situations that involve informants. On summary judgment, defendants may be able to show that, in fact, the field test of the cocaine was not material to the issuance of the warrant, or that immunity will attach because Lyons did perform an adequate field test. *Cf. Wilson*, 212 F.3d at 789-92 (finding qualified immunity at the summary judgment stage, where misrepresentations in a warrant were immaterial to its issuance); *Garcia*, 24 F.3d at 970 (rejecting the claim that a more effective field test is constitutionally required so as to eradicate false positives and subsequent arrests based on less sophisticated field tests).

However, to countenance a holding that whenever police obtain white powder regardless of its source always suffices to establish probable cause, even by hindsight, would effectively eradicate the Third Circuit's holding in *Wilson* that specifically provides for redress based on

material misrepresentations in obtaining probable cause warrants. Accordingly, Plaintiffs have stated valid constitutional violations.

*The right was clearly established.* As for the next step in the analysis, it is beyond cavil that the right to be free from false arrest and the other constitutional torts based on making a material misrepresentation in a warrant was clearly established in 2007. *Wilson* was decided in 2000 and is, in large part, grounded in *Franks v. Delaware*, 438 U.S. 154 (1978). *Wilson*, 212 F.3d at 787. In *Franks*, the Court held that the constitution requires evidence to be suppressed as a result of a probable cause warrant infected by a false statement made knowingly or recklessly, without which the warrant would not have issued. *Franks*, 438 U.S. at 155-56. The right being clearly established, qualified immunity cannot attach.

The Court also finds that Plaintiffs have stated a claim against Defendant Frekyar for his participation. Personal involvement on the part of a defendant in the alleged wrong is required in § 1983 actions. *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge, however, must be made with appropriate particularity." *Id.* The Court finds that the allegations against Detective Frekyar are particularized enough at this stage of the proceedings. Plaintiffs allege that he positioned himself nearby Babcock with a device to monitor and record the transactions. Compl. ¶¶ 27, 31, 35. This suffices for participation and actual knowledge at the 12(b)(6) stage.

The same analysis obtains for Defendant Cooney, and to that end, Plaintiffs' motion to amend the Complaint is granted.[3]

---

[3] The Court relies upon Exhibit A attached to the amended complaint which directly shows Sergeant Cooney's personal involvement. The Court is entitled to rely on the document. *See Pryor v. Nat'l Collegiate Athletic Ass'n,*

### 2. Reed

The Court will address the argument that Reed is entitled to prosecutorial immunity for the investigation of Plaintiffs.

Prosecutors enjoy absolute immunity for acts performed in a quasi-judicial role. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, actions taken in an investigatory or administrative capacity are protected by qualified immunity. *Burns v. Reed*, 500 U.S. 478, 492 (1991). Exhibit A to the Amended Complaint indicates that Reed field tested drugs himself – an investigative function. This fact alone precludes the finding of absolute immunity. As the Supreme Court stated in *Buckley v. Fitzsimmons*:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. <u>When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.</u>

509 U.S. 259, 273 (1993) (citations and internal quotation marks omitted) (emphasis added). Accordingly, Reed is not absolutely immune.

Nor can this Court rule at this time that he is qualifiedly immune, either, for the reasons that neither Detectives Lyons, Frekyar, and Cooney are immune. The field tests and the existence, or lack thereof, of probable cause comprise the very core of this case. Reed's purported personal involvement in identifying whether or not the white rocks were controlled substances is investigatory in nature. The claim against him survives at this time because of the nature of the rights alleged to have been violated and clearly established law.

---

288 F.3d 548, 559 (3d Cir. 2002) ("[g]enerally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss").

### B. The State Law Claims

#### 1. Malicious Prosecution

To prevail on a claim for malicious prosecution under state law, a plaintiff must prove, by a preponderance:

> (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff. The plaintiff must establish each element. Upon failure to prove any one, the cause must fail. Each element is separable from the others, although evidence of one may be relevant with respect to another. For example, proof of lack of probable cause may be appropriate evidence from which to infer but not necessarily establish malice.

*Brunson v. Affinity Federal Credit Union*, 402 N.J. Super. 430, 438 (App. Div. 2008) (citations omitted). Plaintiffs have stated a claim: they adequately allege that they were arrested; they infer (reasonably or not) that malice caused their arrests; they allege that the police lacked probable cause to arrest; and they state that the charges against them were administratively dismissed. The motion to dismiss this claim is denied.

#### 2. False Arrest

"False arrest . . . is the constraint of the person without legal justification." *Fleming v. United Parcel Service*, 255 N.J. Super 108, 155 (App. Div. 1992). The claim has two elements: (1) an arrest or detention of the person against his will; (2) done without legal authority. . ." *Id.* Probable cause to arrest is an absolute defense to the claim. *Id.* Under New Jersey law, a claim for false imprisonment cannot lie here where there is a valid claim for malicious prosecution.

In *Fleming*, the court blended together the torts of false arrest and false imprisonment. The Appellate Division has held as early as 1966, relying on Prosser and Keeton, that where the defendant "causes the issuance of a warrant upon which one is arrested [such actions do] not give

rise to a cause of action for false imprisonment," and by extension via *Fleming*, false arrest. *Id.* (quoting *Genito v. Rabinowitz*, 93 N.J. Super. 225, 228 (App. Div. 1966)). The action, instead, must be one for malicious prosecution which has been asserted here. This claim is dismissed.

### 3. Due Process[4]

While the New Jersey Constitution does not contain the phrase "due process," Article 1, paragraph 1 "has been interpreted guaranteeing the fundamental rights of life, liberty, and property." *K.J. ex rel. Lowry v. Div. of Youth and Family Svcs.*, 363 F. Supp. 2d 728, 745 (D.N.J. 2005). *Lowry* confronted the question of whether or not the state constitution permits a private right of action when the government violates a person's due process rights. The court held that it did not. *Id.* at 745-47. The court canvassed the New Jersey legislative scheme in reaching this conclusion, and held that it was "not likely . . . that an additional remedy may be inferred under the New Jersey Constitution for the circumstances of this case." *Id.* at 747 This Court is inclined to agree with Judge Brotman's thoughtful analysis[5] and conclude that there is no private right of action directly under the due process clause of the state constitution.

### 4. Equal Protection

Neither does the New Jersey Constitution contain the phrase "equal protection." Again, however, the courts have interpreted Article 1, paragraph 1 as providing an equal protection guarantee. *See Peper v. Princeton University Bd. Of Trustees*, 77 N.J. 55, 79 (1978). However,

---

[4] The due process, equal protection, denial of rights, and illegal search claims were not pled as separate counts. Rather, Plaintiffs chose to inartfully assert violations of these rights subsumed in Counts Two (state false arrest) and Three (state malicious prosecution). The Court reads the Complaint liberally and is charged with determining whether "under any reasonable reading. . . the Plaintiff may be entitled to relief." *Pinker v. Roche Holdings, Ltd.* 292 F.3d. 361, 374 n. 7 (3d Cir. 2002). Thus, because it is reasonable that Plaintiffs have asserted these claims albeit in a round-a-bout way, the Court has chosen to address these asserted violations of the state constitution.

[5] This issue is discussed more at length, *infra*, slip op. pp. 14-15. Suffice it is to say here that state courts across the country have generally been unwilling to recognize a due process clause private right of action under their state constitutions. Until the New Jersey Supreme Court rules on the issue, out of an abundance of caution and under principles of comity, it would not be prudent to recognize such a right at this time.

like the due process component of the Article, there is no private right of action for money damages for equal protection violations, except in the employment context. *Lowry*, 363 F. Supp. 2d at 746 ("Those cases permitting a private right of action for a violation of an individual's rights under the New Jersey Constitution appear to be limited to employment discrimination under equal protection"). *But see Joyce v. City of Sea Isle City*, No. 04-5345, 2008 WL 906266, at *21 (D.N.J. Mar. 31, 2008) (Kugler, J.) ("the New Jersey Constitution itself provides a remedy for violations of its provisions"). This claim is dismissed.

### 5. Denial of Rights/Discrimination

Plaintiffs cite Article 1, paragraph 5 of the New Jersey Constitution which proscribes discrimination "because of religious principles, race, color, ancestry, or national origin," and seek relief thereunder. There is no allegation in the Complaint that Plaintiffs were discriminated against for any of those characteristics. This claim is dismissed.

### 6. Illegal Search

Plaintiffs claim violations of Article 1, paragraph 7 of the New Jersey Constitution which is the state analog to the Fourth Amendment's proscription of unlawful searches and seizures. The Court concludes that this claim can survive. While it may seem counterintuitive that a private right of action exists for an illegal search as opposed to due process and equal protection, courts throughout this district have at least implicitly acknowledged a right of action. *See, e.g., McGovern v. City of Jersey City*, No. 98-5186, 2006 WL 42236, at *16 (D.N.J. Jan. 6, 2006) (Linares, J.); *Hrynyk v. Greco*, No. 05-1967, 2006 WL 3677352 (D.N.J. Dec. 12, 2006) (Brown, C.J.).

Lest this seem internally inconsistent, courts across the country have been reluctant to hold that money damages are available for violating a state constitution's due process and equal

protection clauses, and more willing to find a private right of action for illegal searches and seizures based on policy considerations and common law traditions. *Compare Bd. of Cty. of Comm'rs v. Sundheim*, 926 P.2d 545, 549-553 (Colo. 1996) (refusing to recognize an implied cause of action based on state due process clause); *Kelley Prop. Dev., Inc. v. Town of Lebanon*, 627 A.2d 909, 923-924 (Conn. 1993) (same); *77th Dist. Judge v. State*, 438 N.W.2d 333, 339-340 (Mich. App. 1989) (no implied cause of action for equal protection violations) *with Brown v. N.Y.*, 674 N.E.2d. 1129 (N.Y. 1996) (implied cause of action lies for search and seizure violations based on state constitution); *Widgeon v. Eastern Shore Hosp. Center*, 479 A.2d 921, 923-25 (same); *Moresi v. Dept. of Wildlife & Fisheries*, 567 So.2d 1081, 1091-1093 (La. 1990) (same).

As Plaintiffs have adequately stated search and seizure violations for a want of probable cause, the motions to dismiss this claim will be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the § 1983 claims, the state malicious prosecution claim, and the state illegal search and seizure claim are denied. The motions to dismiss the state false arrest, due process, equal protection, and discrimination claims are granted.

s/Susan D. Wigenton<br>
HON. SUSAN D. WIGENTON, U.S.D.J.

cc: Hon. Esther Salas, U.S.M.J.